UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      .
                               .
          Plaintiff,           .    CR No. 08-0106 (JDB)
                               .
     v.                        .
                               .
JAPAN AIRLINES                 .    Washington, D.C.
INTERNATIONAL CO., LTD.        .    Wednesday, May 7, 2008
                               .    9:20 a.m.
          Defendants.          .
                               .
. . . . . . . . . . . . . . . .

          TRANSCRIPT OF PLEA/SENTENCING
    BEFORE THE HONORABLE JOHN D. BATES
         UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:           BRENT C. SNYDER, ESQ.
                              MARK ROSMAN, ESQ.
                              KATHRYN HELLINGS, ESQ.
                              MARK GRUNDVIG, ESQ.
                              AMANDA DOWNING, ESQ.
                              U.S. Department of Justice
                              Antitrust Division
                              450 5th Street, NW
                              Suite 11300
                              Washington, D.C. 20530
                              202-616-3186


For the Defendant:            MARK J. HULKOWER, ESQ.
                              WILLIAM KARAS, ESQ.
                              ERIN S. VAGLEY, ESQ.
                              Steptoe & Johnson, LLP
                              1330 Connecticut Avenue, NW
                              Washington, D.C. 20036
                              202-429-6221


Court Reporter:               BRYAN A. WAYNE, RPR, CRR
                              U.S. Courthouse, Room 6714
                              333 Constitution Avenue, NW
                              Washington, D.C. 20001
                              202-354-3186


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

PDF created with pdfFactory Pro trial version www.pdffactory.com

```
1                    P R O C E E D I N G S

2            THE DEPUTY CLERK:  Your Honor, we have Criminal Action

3    08-106, United States of America versus Japan Airlines

4    International Company, Ltd.  I'll ask counsel to please come to

5    the lectern and identify yourselves and those at your respective

6    tables, please.

7            MR. ROSSMAN:  Mark Rosman with the United States.

8            MR. SNYDER:  Brent Snyder for the United States.  With

9    me are Kathryn Hellings, Mark Grundvig, Amanda Downing for the

10   United States.

11           THE COURT:  All right.  Good morning to all of you.

12           MR. HULKOWER:  Good morning, Your Honor.

13   Mark Hulkower, William Karas, Erin Vagley on behalf of the

14   defendant Japan Airlines.  With us today is Kazuhide Yamazaki,

15   who is the vice president of legal affairs for Japan Airlines.

16           THE COURT:  And good morning to all of you.

17   All right.  Who's going to be the lead for the government?

18           MR. SNYDER:  I will, Your Honor.

19           THE COURT:  So I will know who to be turning to at the

20   appropriate time.  And Mr. Hulkower, I assume you will be --

21           MR. HULKOWER:  Yes, Your Honor.

22           THE COURT:  We're here this morning for consideration

23   of a proposed guilty plea, first of all, which is proposed to be

24   entered pursuant to Federal Rule of Criminal Procedure

25   11(c)(1)(C).  That's in this criminal antitrust matter.
```

PDF created with pdfFactory Pro trial version www.pdffactory.com

```
 1         The defendant is a corporation, and therefore we need to

 2    begin with a few questions regarding the corporate defendant,

 3    Japan Airlines International Company, Ltd., and the individual

 4    who will be speaking on behalf of the corporation today.

 5         Could Mr. Yamazaki come up to the lectern and microphone

 6    with you, please, Mr. Hulkower.

 7         (Defendant and counsel comply.)

 8              THE COURT:  Good morning.

 9              THE DEFENDANT:  Good morning.

10              THE COURT:  Would you please state your name for the

11    record, please.  And you better spell it for the court reporter.

12              THE DEFENDANT:  Yes.  First name K-A-Z-U-H-I-D-E.

13    Last name Y-A-M-A-Z-A-K-I.

14              MR. HULKOWER:  Common spelling, Your Honor.

15              THE COURT:  Mr. Yamazaki, do you read and understand

16    and speak English?

17              THE DEFENDANT:  Yes, Your Honor.

18              THE COURT:  All right.  I would ask Mr. Bradley, then,

19    at this time to administer the oath to you.

20         (The defendant is sworn.)

21              THE COURT:  All right.  Are you employed by

22    Japan Airlines?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  What's your position, please, sir?

25              THE DEFENDANT:  My position is vice president of legal
```

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    affairs.

2              THE COURT:  And how long have you held that position?

3              THE DEFENDANT:  For three years.

4              THE COURT:  And are you familiar with the facts and

5    circumstances of this matter that brings us here today?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Is the board of directors of Japan

8    Airlines empowered to authorize an individual to enter a plea of

9    guilty to the charge that is set out in Count 1 of the

10   information in criminal case No. 08-106 in this court?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  And has the board of directors authorized

13   you to enter a plea of guilty to that charge?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Is there a valid resolution of the board

16   so authorizing you?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And do we have -- Mr. Bradley, do we have

19   an original certified board resolution that is part of the plea

20   papers here today?

21             THE DEPUTY CLERK:  Yes, Your Honor.

22             THE COURT:  All right.

23        Mr. Yamazaki, is the corporation, based on your knowledge,

24   financially able to pay a substantial fine?  Specifically we're

25   talking as proposed in the plea agreement a fine of $110 million

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    on a payment schedule that may be imposed here today.

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  All right.  I find that the board of

4    Japan Airlines is empowered to authorize an individual to enter

5    a plea of guilty to the charge, that the board has authorized

6    Mr. Yamazaki to enter that plea, that there is a valid

7    resolution of the board so authorizing him, and that the

8    corporation, based on Mr. Yamazaki's knowledge and the other

9    papers that are before me as well, is financially able to pay a

10   substantial fine as indicated.

11        Therefore, we will proceed today with consideration of the

12   proposed plea under Federal Rule of Criminal Procedure

13   11(c)(1)(C), and then, if that plea is accepted by the Court, we

14   will move on to sentencing this morning as the defendant and the

15   government have agreed and requested the Court to do.  So with

16   that, we will go to the plea phase of this morning's proceedings.

17        Now, I understand that Japan Airlines wishes to enter a

18   plea of guilty to Count 1 of the information.  Is that correct,

19   Mr. Hulkower?

20             MR. HULKOWER:  That is correct, Your Honor.

21             THE COURT:  And this proposed plea, as I indicated, is

22   pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

23   Now, before I can accept the guilty plea, Mr. Yamazaki, I need

24   to ask you certain questions that must be answered, and you're

25   under oath.  Do you understand that you are under oath?

PDF created with pdfFactory Pro trial version www.pdffactory.com

1          THE DEFENDANT:  Yes, I do, Your Honor.

2          THE COURT:  And do you understand that your answers

3    could later be used against you or Japan Airlines in this or

4    another proceeding?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And do you understand that if you do not

7    answer my questions truthfully, you may be prosecuted for

8    perjury or for making a false statement?

9          THE DEFENDANT:  Yes, I do, Your Honor.

10         THE COURT:  All right.  Just to repeat, I'm going to

11   ask you some questions.  They're to make sure that Japan

12   Airlines is entering a plea of guilty, if it chooses to do so

13   today, knowingly, voluntarily, and intelligently, and with the

14   advice of its attorney.

15       If you don't understand any question that I ask or anything

16   else about the proceedings, please feel free to let me know

17   that, and I will try to explain or repeat the question.  Most

18   importantly, if at any time you need to consult with your

19   counsel, let me know that and you'll be given a chance to do so

20   privately.

21       Have you and Japan Airlines had sufficient time to consult

22   with your attorneys about this case?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  And are you satisfied with the services of

25   your attorneys in this case?

PDF created with pdfFactory Pro trial version www.pdffactory.com

1          THE DEFENDANT:  Yes.

2          THE COURT:  And have you had the opportunity to

3    discuss with your attorneys the charges against Japan Airlines

4    and whether it should enter a plea in this case?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Counsel, have you had sufficient time to

7    review and investigate the law and the facts in this case?

8          MR. HULKOWER:  We have, Your Honor.

9          THE COURT:  In your opinion, does Japan Airlines

10   understand the nature of the charges pending against it?

11         MR. HULKOWER:  I believe they do.

12         THE COURT:  Back to you, Mr. Yamazaki.  Again, before

13   accepting your plea, I need to explain certain rights that Japan

14   Airlines has and make sure that you and Japan Airlines

15   understands them.  Listen closely.  Most of all, be patient,

16   because it takes a few minutes, and let me know if you don't

17   understand anything or if you wish to consult with your

18   attorney.

19      Do you understand that the charge against Japan Airlines is

20   a felony charge?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  Now, Japan Airlines has a right to have

23   the members of a grand jury indict and charge it with a felony,

24   and a federal grand jury, which is composed of at least 16 and

25   not more than 23 citizens in this instance of the District of

PDF created with pdfFactory Pro trial version www.pdffactory.com

1   Columbia, would sit.

2         In order to charge you, at least 12 of those grand jurors

3   would have to find that there is probable cause to believe that

4   a crime has been committed and that Japan Airlines committed it.

5   If they charged Japan Airlines, they would list the charges in a

6   written indictment.  If Japan Airlines does not give up its

7   right to be charged by grand jury indictment, then the

8   government cannot file felony charges against Japan Airlines on

9   its own.

10        In this case, the felony charge against Japan Airlines has

11  been brought by the Department of Justice through the filing of

12  an information.  If Japan Airlines does not give up its right to

13  be charged by grand jury indictment, then the government may

14  present the case to the grand jurors and ask them to indict

15  Japan Airlines, and a grand jury might indict Japan Airlines.

16        If Japan Airlines does give up its right to be charged by a

17  grand jury through an indictment, then the case will proceed on

18  the basis of the United States Department of Justice's

19  information just as though Japan Airlines had been indicted.

20        Now, do you understand the right to indictment by a grand

21  jury?

22              THE DEFENDANT:  Yes, I do, Your Honor.

23              THE COURT:  And have you discussed giving up Japan

24  Airlines' right to indictment by the grand jury with your

25  attorneys?

PDF created with pdfFactory Pro trial version www.pdffactory.com

1        THE DEFENDANT:  Yes.

2        THE COURT:  Have any threats or promises, other than

3   the promises made in the plea agreement, been made to induce

4   Japan Airlines to give up its right to indictment?

5        THE DEFENDANT:  No, Your Honor.

6        THE COURT:  And does Japan Airlines wish to waive its

7   right to indictment by a grand jury?

8        THE DEFENDANT:  Yes, Your Honor.

9        THE COURT:  And by pleading guilty to the information,

10  Japan Airlines will be waiving this right to grand jury

11  indictment.  Do you understand that?

12       THE DEFENDANT:  Yes.

13       THE COURT:  And we have a signed waiver, Mr. Bradley?

14       THE DEPUTY CLERK:  Correct, Your Honor.

15       THE COURT:  If you could hand that to Mr. Hulkower.

16    On the bottom of that form, Mr. Yamazaki, is that your

17  signature on behalf of Japan Airlines waiving the airline's

18  right to indictment by a grand jury?

19       THE DEFENDANT:  Yes, Your Honor.

20       THE COURT:  All right.  If you could hand that back to

21  Mr. Bradley.  Counsel, is there any reason that Japan Airlines

22  should not waive indictment?

23       MR. HULKOWER:  There is not, Your Honor.

24       THE COURT:  All right.  I find that the waiver of

25  indictment by a grand jury is knowingly and voluntarily made, it

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    is accepted, I have signed the waiver, and it will be filed in

2    the court record.

3        Japan Airlines has the right to plead not guilty to any

4    offense charged against it.  Do you understand that?

5            THE DEFENDANT:  Yes, I do, Your Honor.

6            THE COURT:  And Japan Airlines would have a right to

7    challenge the government's case against it by seeking to have

8    the charges dismissed or to have the evidence against it

9    suppressed or thrown out.  Do you understand that?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  And as a company organized under the laws

12   of Japan, Japan Airlines has the right to decline to accept

13   service of the summons and information in this case and has the

14   right to contest venue and the jurisdiction of the United States

15   to prosecute this case in this court.  Do you understand that?

16           THE DEFENDANT:  Yes, I do, Your Honor.

17           THE COURT:  Now, under the constitution and the laws

18   of the United States, Japan Airlines has the right to have a

19   jury trial in this case, which means that 12 citizens, again of

20   the District of Columbia, would sit as a jury and determine

21   whether Japan Airlines is guilty or not guilty based upon

22   evidence presented in the courtroom.

23       Do you understand the right to a jury trial that Japan

24   Airlines has?

25           THE DEFENDANT:  Yes, I do, Your Honor.

PDF created with pdfFactory Pro trial version www.pdffactory.com

1          THE COURT:  And if Japan Airlines chooses to go to

2    trial, it would have a right to be represented by its lawyer at

3    that trial.  Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And at trial, Japan Airlines would have

6    the right, through its lawyers, to confront and cross-examine

7    any witnesses against it.  Do you understand that?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  And Japan Airlines would also have the

10   right to present its own witnesses, and it would have the right

11   to subpoena them to require them to testify in Japan Airlines'

12   defense at trial.  Do you understand that?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Unless and until I accept the guilty plea

15   proposed on the part of Japan Airlines this morning -- again, if

16   it chooses to enter one -- Japan Airlines is presumed by the law

17   to be innocent, because it's the government's burden, through

18   competent evidence, to prove Japan Airlines' guilt beyond a

19   reasonable doubt, and until it does, Japan Airlines cannot be

20   convicted at trial.  Do you understand that?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  And do you understand that if Japan

23   Airlines went to trial and was convicted, it would have the

24   right to appeal its conviction to the court of appeals and to

25   have a lawyer help it prepare that appeal?

PDF created with pdfFactory Pro trial version www.pdffactory.com

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And do you understand that by pleading

3     guilty, Japan Airlines would be generally giving up its right to

4     appeal?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Now, just to summarize, do you understand

7     that if Japan Airlines pleads guilty in this case and I accept

8     its guilty plea, Japan Airlines will give up all of the rights I

9     just explained because there will not be any trial, there

10    probably will not be any appeal, and Japan Airlines must

11    acknowledge its guilt on these charges in order for me to accept

12    the plea.  Do you understand all of that?

13         THE DEFENDANT:  Yes, I do, Your Honor.

14         THE COURT:  And does Japan Airlines wish to give up

15    its rights to a trial, its rights to an appeal in most

16    circumstances, and all of the rights that I explained that Japan

17    Airlines would have if the case went to trial?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And do we have a signed waiver of right to

20    jury trial?  I think that's been handed to Mr. Hulkower, and if

21    you would show that to Mr. Yamazaki, I would ask you whether

22    that is your signature on that form waiving the right to a jury

23    trial.

24         THE DEFENDANT:  Yes.

25         THE COURT:  All right.  If you could hand that back.

PDF created with pdfFactory Pro trial version www.pdffactory.com

1      Counsel, is there any reason that the airline should not

2   waive a jury trial as to the charge to which a plea of guilty

3   will be made?

4           MR. HULKOWER:  No, Your Honor.

5           THE COURT:  I find that the waiver is knowingly and

6   voluntarily made, it is accepted, and the signed waiver will be

7   filed.

8      Mr. Yamazaki, again, have you and your attorney received a

9   copy of the information in this case which contains the written

10   charge against you, Japan Airlines?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And have you and other officers of Japan

13   Airlines read that information and has your lawyer explained to

14   you and Japan Airlines the charge in the information?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  And has Japan Airlines had the opportunity

17   to discuss the charge and the case in general fully with its

18   attorneys?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  And do you understand that the information

21   charges Japan Airlines with the offense in a single count of

22   conspiracy to restrain trade -- this is known as the air cargo

23   conspiracy -- in violation of the Sherman Act, which is Section

24   1 of Title 15 of the United States Code?

25      Do you understand that is the charge?

PDF created with pdfFactory Pro trial version www.pdffactory.com

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Before I can accept a guilty plea, I need

3    to make a determination that there is a factual basis for the

4    plea of guilty.  I would ask you to listen closely, let me know

5    if Mr. Snyder, the attorney for the government, says anything

6    that you think is wrong or inaccurate.

7          We do have as part of the plea agreement a written factual

8    proffer or factual statement that I believe is on pages 3 and 4

9    of the plea agreement, and that's paragraph 4.  I would just ask

10    you whether your signature on the plea agreement, which we'll

11    get to again in a moment -- I believe it's on page 18 of the

12    plea agreement.

13          Does your signature represent your agreement, on behalf of

14    Japan Airlines, in full to the factual proffer that is contained

15    in the plea agreement?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  All right.  You may have a seat for just a

18    moment, and I would ask Mr. Snyder to come up to the lectern.

19          To begin with, would the government please state the

20    elements of the charge that has been brought.

21          MR. SNYDER:  Yes, Your Honor.  The information charges

22    that Japan Airlines violated Title 15 U.S.C. §1, which is the

23    Sherman Act.  In order to prove a violation of the Sherman Act,

24    the United States must prove beyond a reasonable doubt that

25    there was an agreement between competitors to fix prices, that

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    the defendant knowingly joined that agreement, and that the

2    agreement had a substantial effect on interstate and/or foreign

3    trade and commerce.

4            THE COURT:  And now would you summarize the factual

5    basis for the case and what it is that the government would

6    prove if the case went to trial.

7            MR. SNYDER:  If the case went to trial, the government

8    would prove beyond a reasonable doubt that from at least April

9    2000 until February 2006, JAL participated in a conspiracy with

10   competitors to fix the cargo rates that would be charged for

11   shipments of cargo by air to and from the United States and

12   elsewhere.

13       JAL knowingly joined that conspiracy by engaging in

14   communications and meetings with its competing co-conspirators

15   for the purpose of reaching agreements that fixed the prices

16   that JAL and its co-conspirators would charge to their

17   respective customers for shipments to and from the

18   United States.

19       JAL and its co-conspirators then implemented the

20   agreed-upon prices and continued to communicate with each other

21   for the purpose of ensuring compliance with that agreement.

22   They also continued to communicate with their co-conspirators

23   thereafter for the purpose of ensuring continued compliance and

24   the continued implementation of the price-fixing agreement.

25           THE COURT:  All right.  Thank you, Mr. Snyder.

PDF created with pdfFactory Pro trial version www.pdffactory.com

1          Mr. Hulkower, if you and Mr. Yamazaki could come back up to

2      the lectern, please.

3          Mr. Yamazaki, are there any corrections or changes that you

4      would make on behalf of Japan Airlines to the summary of what

5      the government says that it can prove?

6              THE DEFENDANT:  No, Your Honor.

7              THE COURT:  And is that factual summary true and

8      correct?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And did Japan Airlines in fact do what the

11     government has stated that it can prove at trial?

12             THE DEFENDANT:  Yes.

13             THE COURT:  We have a written plea agreement that I

14     referred to a moment ago.  Do you have a copy of that agreement?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And have you had a chance to read it over

17     carefully?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  And have you had the chance to discuss it

20     fully with Japan Airlines' lawyers?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  And do you understand it?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  And again, on page 18 of the original of

25     that document which Mr. Bradley is handing you, Mr. Hulkower, is

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    that your signature, Mr. Yamazaki, accepting and agreeing to the

2    terms of the plea agreement on behalf of Japan Airlines?

3            THE DEFENDANT:  Yes, it is, Your Honor.

4            THE COURT:  Now, does the plea agreement reflect the

5    entire understanding that Japan Airlines has with the government?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Mr. Hulkower, do you agree that is the

8    case?

9            MR. HULKOWER:  Yes, Your Honor.

10            THE COURT:  And Mr. Snyder, on behalf of the

11    government, do you agree that the plea agreement reflects the

12    entire understanding the government has with Japan Airlines?

13            MR. SNYDER:  Yes, Your Honor.

14            THE COURT:  Is there any need to reference certain

15    sections of the plea agreement, or are you prepared to simply

16    file the written agreement?

17            MR. SNYDER:  We are prepared to file the written

18    agreement.

19            THE COURT:  All right.  The written plea agreement

20    will be filed in the court record.

21        Now, Mr. Yamazaki, Japan Airlines is, as I understand it,

22    proposing to plead guilty to the offense of conspiracy to

23    restrain trade in violation of the Sherman Act, which is part of

24    the United States Code, specifically Section 1 of Title 15.

25        Do you understand that if I accept Japan Airlines' guilty

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    plea in this case, it could receive the following penalties:

2         First, a fine of up to the greatest of either, first, $100

3    million as set forth in the Sherman Act, or twice the gross

4    pecuniary gain the conspirators derived from the crime, which is

5    set forth in sections 3571(c) and (d) of Title 18, or twice the

6    gross pecuniary loss caused to the victims of the crime by the

7    conspirators as set forth in the same statute.

8         Do you understand that is the definition of the fine that

9    Japan Airlines could receive?

10              THE DEFENDANT:  Yes, I do, Your Honor.

11              THE COURT:  Do you also understand that Japan Airlines

12   could receive a term of probation of at least one year but not

13   more than five years?

14              THE DEFENDANT:  Yes, Your Honor.

15              THE COURT:  And do you understand that Japan Airlines

16   is subject to an order to make restitution, which is to pay

17   money back to any victim who may have sustained a loss, unless

18   the Court explains on the record why it is not ordering Japan

19   Airlines to do so?

20              THE DEFENDANT:  Yes, Your Honor.

21              THE COURT:  And finally, do you understand that

22   Japan Airlines is subject to a special assessment of $400

23   for a felony offense as required by statute, specifically

24   §3013(a)(2)(B) of Title 18 of the United States Code?

25              THE DEFENDANT:  Yes, I do, Your Honor.

PDF created with pdfFactory Pro trial version www.pdffactory.com

```
1              THE COURT:  And you understand on behalf of Japan
2    Airlines all those possible consequences of this plea; is that
3    correct?
4              THE DEFENDANT:  Yes.
5              THE COURT:  Now, let me briefly review something I'm
6    sure your counsel has discussed with you and others at Japan
7    Airlines.  The case falls within the Sentencing Reform Act of
8    1984, under which the United States Congress created the
9    United States Sentencing Commission which has issued detailed
10   guidelines for judges such as myself to follow or at least
11   consult in determining the sentence in a criminal case like this.
12        There have been sentencing ranges set for specific
13   offenses.  They're all contained in a guidelines manual --
14   indeed, that's the guidelines manual for this past year, 2007.
15   But in light of Supreme Court of the United States case law, the
16   sentencing guidelines are not mandatory; they are advisory only,
17   although they must be consulted by the Court in determining the
18   appropriate sentence in a case such as this, and I will do so.
19   Indeed, I would normally do so.
20        I would assess and determine the proper sentence in this
21   case by referring to and considering the sentencing guidelines
22   in the first instance, and while all of us -- myself, the
23   prosecutors, your counsel, and Japan Airlines -- have some good
24   idea based on the culpability score of the defendant and the
25   nature of the offense what the sentencing range might be,
```

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    nothing is certain until a presentence report is prepared by the

2    probation office and that has been carefully examined.

3         Now, that report in this case already has been prepared.

4    It's a very brief report, and it's been provided to me and also

5    to the attorneys who have had a chance to make changes in it or

6    object to portions of it, and I'm assuming that Japan Airlines'

7    attorneys have gone over it with you on behalf of the airlines.

8         Later this morning at sentencing, I will hear from both

9    attorneys and I'll make a decision as to what the advisory

10   sentencing guideline range is.  Once I do that, normally

11   speaking, I would still be permitted to impose a sentence

12   outside that sentencing range.  However, I could not sentence

13   Japan Airlines to more than the maximum statutory sentence that

14   I explained to you just a moment ago.

15        Now, here, of course, we're dealing with a plea pursuant to

16   Federal Rule of Criminal Procedure 11(c)(1)(C), and I will

17   address that specifically in a few moments.

18        Mr. Yamazaki, has Japan Airlines and its attorneys talked

19   about the sentencing guidelines and how they might apply to this

20   case?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  And does Japan Airlines understand that I

23   cannot determine what the sentence would be under the guidelines

24   until I have reviewed the presentence report from the probation

25   office and I have heard from your attorneys and from the

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    government?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And do you understand that after I have

4    decided what guideline applies to this case, normally speaking

5    I would still have the authority in my discretion to impose a

6    sentence -- and specifically talking about a fine in this case

7    -- that is more severe or less severe than the sentence called

8    for by the guidelines?  Do you understand that?

9              THE DEFENDANT:  Yes, I do, Your Honor.

10             THE COURT:  And do you understand that under some

11   circumstances, not only Japan Airlines but also the government

12   would normally have the right to appeal any sentence that I

13   impose if Japan Airlines or the government believe that the

14   sentence was improper or unlawful?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Now, here, do you understand that under

17   the plea agreement, Japan Airlines is giving up its right to

18   challenge the sentence that I impose in this case, and that's

19   pursuant to paragraph 2 of the plea agreement, which is found on

20   page 2.

21        It reads specifically that "The defendant knowingly and

22   voluntarily waives the right to file any appeal, any collateral

23   attack, or any other writ or motion, including but not limited

24   to an appeal under 1818 U.S.C. §3742 that challenges the

25   sentence imposed by the Court if that sentence is consistent

PDF created with pdfFactory Pro trial version www.pdffactory.com

1  with or below the recommended sentence in paragraph 8 of the

2  plea agreement."

3      Do you understand that that is the limitation on the rights

4  of Japan Airlines to file any appeal?

5          THE DEFENDANT:  Yes, I do, Your Honor.

6          THE COURT:  Now, as I indicated several times already

7  this morning, the plea is being entered pursuant to Federal Rule

8  of Criminal Procedure 11(c)(1)(C).  If Japan Airlines pleads

9  guilty and I accept the plea, the presentence report will then

10 be assessed, and I will then consider whether or not to accept

11 the plea agreement, including the agreed-upon sentence.

12     So we're doing this in two stages.  At this time I am

13 deferring a decision on the plea agreement until consideration

14 of the presentence report at the sentencing phase of this

15 proceeding, which will occur in a few minutes.

16     So now I will only be accepting the plea of guilty.  I will

17 consider the plea agreement and the agreement as to the sentence

18 in a few minutes at the sentencing phase of the hearing.  If I

19 accept the plea agreement then, the agreed sentencing

20 disposition will be imposed as part of the judgment in this case.

21     On the other hand, if I were to decide to reject the plea

22 agreement, Japan Airlines would then have an opportunity to

23 withdraw its plea and change that plea to not guilty.  Do you

24 understand that?

25         THE DEFENDANT:  Yes, I do, Your Honor.

PDF created with pdfFactory Pro trial version www.pdffactory.com

1        THE COURT:  Now, the plea agreement includes an

2  agreement by Japan Airlines to cooperate with the United States

3  as set out on pages 9 through 12 of the plea agreement and the

4  acknowledgement by the United States that it would have made a

5  motion pursuant to §8C4.1 of the sentencing guidelines for a

6  downward departure.

7        Does Japan Airlines understand and agree to cooperate with

8  the United States as set forth in the plea agreement?

9        THE DEFENDANT:  Yes, Your Honor.

10        THE COURT:  Mr. Yamazaki, has anyone made any promises

11  that you are aware of in connection with Japan Airlines'

12  proposed guilty plea other than those that are contained in the

13  plea agreement or that have been stated here in open court

14  today?

15        THE DEFENDANT:  No, Your Honor.

16        THE COURT:  Has anyone forced, threatened, or coerced

17  you or Japan Airlines in any way into entering this plea of

18  guilty?

19        THE DEFENDANT:  No, Your Honor.

20        THE COURT:  Is there anything that you or your

21  employer, Japan Airlines, does not understand about this

22  proceeding or about its plea in this case?

23        THE DEFENDANT:  No, Your Honor.

24        THE COURT:  Is there anything you want to ask me about

25  or speak with your lawyer about before you make a decision on

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    behalf of Japan Airlines whether it wants to plead guilty or

2    instead it wishes to go forward to trial?

3              THE DEFENDANT:  No, Your Honor.

4              THE COURT:  Counsel, is there anything else we need to

5    cover before taking the plea?

6              MR. HULKOWER:  No, Your Honor.

7              THE COURT:  Mr. Snyder?

8              MR. SNYDER:  No, Your Honor.

9              THE COURT:  Are you now ready, Mr. Yamazaki, to make a

10   decision about whether Japan Airlines wishes to enter a plea of

11   guilty or whether instead it wishes to go to trial?  Are you

12   ready to make that decision?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  And how does Japan Airlines plead to the

15   charge in the single count of the information?  Does it plead

16   guilty or not guilty?

17             THE DEFENDANT:  Pleads guilty.

18             THE COURT:  And is Japan Airlines entering this plea

19   of guilty voluntarily and of its own free will?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  And is Japan Airlines entering the plea of

22   guilty because it is guilty and for no other reason?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Mr. Hulkower, do you know of any reason

25   why Japan Airlines should not plead guilty to the charge?

PDF created with pdfFactory Pro trial version www.pdffactory.com

1           MR. HULKOWER:  No, Your Honor.

2           THE COURT:  It is the finding of the Court in the case

3   of United States versus Japan Airlines International Company,

4   Ltd., which is criminal No. 08-106 in this court, that the

5   defendant Japan Airlines is fully competent and capable of

6   making a decision today and entering an informed plea, that it

7   understands the nature of the charges and consequences of what

8   it is doing, that it is acting voluntarily and of its own free

9   will, and that there is an adequate factual basis for its plea.

10  Therefore, the plea of guilty is accepted, and I find Japan

11  Airlines guilty as charged in the information.

12          Now, as I previously stated, this is a plea pursuant to

13  Federal Rule of Criminal Procedure 11(c)(1)(C), and therefore I

14  have accepted the plea of guilty but will consider the plea

15  agreement and specifically the agreed-upon sentence as part of

16  the sentencing phase of the hearing to which we can now move.

17          Mr. Yamazaki, have you and your counsel had a chance to

18  review the very brief presentence report prepared by the

19  probation office in this case?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Mr. Hulkower, are there any remaining

22  issues in dispute?

23          MR. HULKOWER:  The only correction, Your Honor, would

24  be a relative nitpick which is on the third page.

25          THE COURT:  Oh, we like lawyers' nitpicks.

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    MR. HULKOWER:  I can't help myself, Your Honor.  If

2    you look at the top left corner, it appears that a template --

3    THE COURT:  It appears significantly that the airline

4    has changed.

5    MR. HULKOWER:  And we are prepared to have Korean

6    Airlines pay the fine, Your Honor.

7    (Laughter)

8    THE COURT:  Looks like templates were used by the

9    probation office.  Thank you for that correction, Mr. Hulkower.

10   All right.  Mr. Snyder, any remaining issues in dispute?

11   MR. SNYDER:  No, Your Honor.

12   THE COURT:  I will accept the presentence report of

13   the probation office as findings of fact on issues that are not

14   in dispute pursuant to Federal Rule of Criminal Procedure

15   32(b)(6)(D).

16   As I said in the earlier proceedings this morning, the case

17   falls under the Sentencing Reform Act of 1984 by which Congress

18   created the United States Sentencing Commission, and detailed

19   guidelines have been issued by the commission for judges such as

20   myself to consult in determining the sentence in a criminal case

21   like this.

22   There are sentencing ranges for specific offenses.  They're

23   all in a guidelines manual, but they are not mandatory; they are

24   only advisory under Supreme Court case law, and therefore,

25   normally what I would do is look at the sentencing guidelines in

PDF created with pdfFactory Pro trial version www.pdffactory.com

```
 1    the first instance in determining the proper sentence in a case

 2    such as this.   Those sentencing guidelines, however, would be

 3    treated solely as advisory, not mandatory, and there's no

 4    presumption that a guidelines sentence is the correct sentence.

 5    The guidelines are simply considered along with all other

 6    relevant factors.

 7        Here, of course, we're proceeding pursuant to a rule

 8    11(c)(1)(C) plea, and therefore, in assessing the agreed-upon

 9    sentence, I will look to the impact of the sentencing guidelines

10    and consider what would have been called for under the

11    guidelines in an advisory manner absent the plea agreement under

12    Rule 11(c)(1)(C).

13        So let's look to the guidelines calculation very briefly.

14    And you can have a seat.   You need not stand at the lectern

15    during this part of the proceedings.

16            MR. HULKOWER:  May I join him, Your Honor?

17            THE COURT:  You may join him, Mr. Hulkower.

18        The defendant Japan Airlines has pled guilty to one count

19    in the information, and that is conspiracy in restraint of trade

20    in violation of the Sherman Act, Section 1 of Title 15 of the

21    United States Code.

22        So undertaking the guideline calculation, and I will note

23    that it is consistent with the probation office's calculation,

24    and with what both the government and the defendant have agreed

25    to, we look to the 2007 guidelines manual.   The applicable
```

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    guideline for violation of the Sherman Act is §2R1.1.

2        Now, 8A1.2 provides instructions for organizations such as

3    Japan Airlines, and pursuant to §8A1.2(b)(2), the Court utilizes

4    §8C2.1 to identify the counts for which the provisions of §8C2.2

5    through 2.9 apply to determine that appropriate fine for an

6    organization.

7        Under §2R1.1(a) that I referenced a moment ago, the base

8    offense level for this criminal antitrust violation is 12. The

9    specific offense characteristic that applies here pursuant to

10   §2R1.1(b)(2) is an adjustment to the offense level of 12 levels

11   because of the volume of commerce attributable to the defendant

12   in the relevant time period was $665,100,000. That makes an

13   adjusted offense level of 24.

14       Now, the base fine calculation, according to §8C2.4(b) of

15   the guidelines is contingent on the special instruction in

16   Chapter 2 which calls for a 20 percent -- which calls for 20

17   percent of the volume of the affected commerce.

18       So that's 20 percent of the $665,100,000 volume of affected

19   commerce, which is, by my calculation and the probation office's

20   calculation, $133,020,000. There's no pecuniary gain or loss

21   that really enters into this, so therefore, that is the base

22   fine applicable here.

23       With respect to a culpability score under §8C2.5 of the

24   guidelines, we begin with five points pursuant to §8C2.5(a), and

25   then the assessment under §8C2.5(b)(2)(A) is that because this

PDF created with pdfFactory Pro trial version www.pdffactory.com

1  organization had more than 1,000 employees and an individual

2  within the high-level personnel of the organization participated

3  in, condoned, or was willfully ignorant of the offense, four

4  points are added to the culpability score.

5       Then, pursuant to §8C2.5(g), because the organization fully

6  cooperated in the investigation and clearly demonstrated a

7  recognition and affirmative acceptance of responsibility for the

8  criminal conduct, there is a two-point reduction, and that means

9  that adding those up, five points plus four points minus two

10 points, leads to a total culpability score of 7.

11      Now, the computation of the fine range under the guidelines

12 based on that culpability score of 7 is done pursuant to §8C2.6

13 of the guidelines, and the minimum multiplier is 1.4 and the

14 maximum multiplier is 2.8.

15      Therefore, pursuant to §8C2.7(a) and (b), the guideline

16 fine range on a base fine of $133,020,000, is, under the

17 guidelines, $186,228,000 to $372 ,456,000.

18      Mr. Snyder, is there any objection to those conclusions as

19 to appropriate offense level, culpability score, and advisory

20 guideline fine range under the sentencing guidelines?

21           MR. SNYDER:  No, Your Honor.

22           THE COURT:  Mr. Hulkower, same question.

23           MR. HULKOWER:  No, Your Honor.

24           THE COURT:  All right.  Now, as I said, under the law

25 following the Supreme Court's decision in United States v.

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    <u>Booker</u>, those sentencing guidelines would only be advisory in

2    any event, but they generally must be considered by the Court

3    along with all other relevant factors when determining the

4    proper sentence.

5        Here, the Court is assessing whether to accept the

6    agreed-upon sentence from the plea agreement, and specifically

7    and most importantly, the agreed-upon fine of $110 million,

8    pursuant to a payment schedule, as set forth in the plea

9    agreement.

10       At this time, would the government like to address the

11   Court concerning sentencing?

12            MR. SNYDER:  Yes, Your Honor.  The United States has

13   recommended a fine of $110 million which represents an amount

14   that Japan Airlines could pay without substantially jeopardizing

15   its continued viability.

16       The United States performed a guidelines analysis much like

17   Your Honor described and ended up calculating a sentencing range

18   under the guidelines of $186 million to $372 million for Japan

19   Airlines before application of any type of a cooperation

20   discount for its early cooperation.

21       It should be noted that JAL did provide early and

22   substantial cooperation to our investigation.  It was, I

23   believe, the second company to begin to cooperate with our

24   investigation after it became aware of the investigation and

25   came in literally days after becoming aware of our

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    investigation, indicated its willingness to accept

2    responsibility and to cooperate.

3        Since that time, it has provided cooperation that can only

4    be described as outstanding.  As a result of that, it would have

5    been the United States' intent to recommend a substantial

6    cooperation discount for the company and to have moved for a

7    downward departure of its fine from a guidelines range fine.

8        However, the United States was aware that Japan Airlines

9    had been experiencing financial difficulties for the prior few

10   years.  As a result of that, and because of our obligation under

11   sentencing guidelines §8C3.3, we undertook an analysis of the

12   fine that JAL could pay without jeopardizing its continued

13   viability.

14       In order to do that, the United States retained an outside

15   accounting expert who has performed several analyses for the

16   United States in past investigations, and he undertook a very

17   lengthy and detailed analysis of JAL's financial condition and

18   its ability to pay.

19       Included in its analysis was an assessment of JAL's ability

20   to pay a guidelines fine based upon its financial performance

21   over the past five years, as well as an assessment of JAL's

22   ability to pay based on its projected performance over the next

23   five years given changes in its business plan and other factors.

24       As a result of that analysis, the United States' accounting

25   expert concluded that JAL was unable to pay a guidelines fine

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    even with the substantial cooperation discount without

2    jeopardizing its continued viability, and the recommended fine

3    of $110 million falls within the range between the lowest

4    estimate that he gave and the highest estimate that he gave of

5    JAL's ability to pay.

6        And for Your Honor's information, the recommended fine does

7    not represent any type of cooperation discount or other type of

8    discount off of JAL's ability to pay but instead is a fine that

9    falls within the range that our accounting expert ultimately

10   concluded the company could pay.

11       THE COURT:  If we were just talking about a

12   cooperation discount -- the term that you've used I will employ

13   as well -- the recommended fine from the government's

14   perspective would be higher than $110 million but still well

15   below 186, I take it.

16       MR. SNYDER:  That is correct.

17       THE COURT:  It would have been about a 33 percent

18   discount?  Is that a fair estimate?

19       MR. SNYDER:  Well, as Your Honor may recall from our

20   earlier cases, there would have been an adjustment within the

21   range for JAL's inbound commerce to factor that into the

22   assessment, and then there would have been a cooperation

23   discount off of that.  I estimate that that cooperation discount

24   probably would have been in the range of about 40 percent, and

25   therefore their fine would have ended up somewhere in the range

PDF created with pdfFactory Pro trial version www.pdffactory.com

```
 1    of 160 to 170 million dollars.

 2              THE COURT:  Forty percent off of what?

 3              MR. SNYDER:  Off of a point above the bottom of the

 4    range.

 5              THE COURT:  All right.  Go ahead.

 6              MR. SNYDER:  And that's the methodology that we used

 7    in assessing its ability to pay and ultimately concluding what

 8    fine the United States would recommend here.

 9              THE COURT:  Could you just address for a moment

10    anything about corporate compliance and corporate compliance

11    programs?

12              MR. SNYDER:  Yes.  It is our understanding -- and it

13    could be that Mr. Hulkower would be in a better position to

14    address that question than I am, but it is my understanding that

15    as a result of this investigation and the conduct that the

16    company has pled guilty to that it has taken steps to reshape

17    and improve its corporate compliance program.

18              THE COURT:  All right.  Thank you.  Mr. Hulkower.

19              MR. HULKOWER:  Thank you, Your Honor.  We joined with

20    Mr. Snyder and the government in filing a joint sentencing memo,

21    and I endorse his comments to the Court about how we think the

22    sentencing should proceed.

23        In terms of compliance, just to address the Court's

24    question, there was a compliance program in place during much of

25    the relevant period.  It was generally ineffective as witnessed
```

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    by the fact that we're all here today for this purpose.

2        Since February two years ago when the investigation

3    surfaced and we began conducting our review of the operations,

4    JAL has substantially beefed up its compliance program.  It has

5    revised all levels of it in terms of advising employees what is

6    acceptable, what is not.

7        It has rewritten its manuals to set out a clear and concise

8    statement of what is appropriate for its personnel and what is

9    not appropriate.  We think it is the type of strong statement

10   from the highest levels of JAL management that will help ensure

11   that we'll not be back here again, that JAL will not be back

12   here before this court, or any other court, for this type or any

13   other type of offense.

14           THE COURT:  All right.  Anything else?

15           MR. HULKOWER:  No, Your Honor.  Thank you.

16           THE COURT:  All right.  Thank you, Mr. Hulkower.

17       All right.  I will now proceed to indicate the reasons for

18   and the sentence that the Court will impose which is a sentence

19   consistent with, indeed precisely, that identified in the plea

20   agreement.  So I will accept the agreed-upon sentence from the

21   plea agreement.

22       I have reviewed all the materials that have been received,

23   including the joint sentencing memorandum, and to begin with I

24   agree with the government and the defendant that in light of

25   pending civil actions, through which there's a possibility of

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    the recovery of treble damages, restitution should not be

2    ordered here after considering the factors under Title 18

3    §3663.

4        I note also that there are serious concerns that have been

5    expressed about the ability of Japan Airlines to pay the

6    substantial fine that will be imposed and substantial

7    restitution at the same time, but all I do is note that those

8    concerns have been expressed.  I am not in a position to reach a

9    judgment on them.  That may be a matter that Japan Airlines

10   still will face in these other pending civil actions.

11       So let me ask -- well, I don't think I need to have

12   Mr. Yamazaki stand up at the lectern while I review the

13   sentence.  It's not a sentence imposed on him personally, but I

14   would like to ask him one question, if you would come up to the

15   lectern, please. (The defendant complies.)

16       You've heard Mr. Hulkower make certain representations with

17   respect to the compliance plan and program that existed at Japan

18   Airlines and improvements, shall we say, that have been made to

19   that compliance program at the corporation since the time of

20   these events coming to light.

21       Do you agree with the representations that he has made?

22           THE DEFENDANT:  Yes, I agree, Your Honor.

23           THE COURT:  Thank you.  You can have a seat again, and

24   I'm going to go through the reasons for the sentence that the

25   Court will impose, which is accepting the agreed-upon sentence

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    set out in the plea agreement and therefore accepting the plea

2    with the sentence as agreed by the government and Japan

3    Airlines.

4        Some of this I've said before in other cases arising out of

5    this same conspiracy involving various airlines.  Start with the

6    observation that it's a very serious offense, obviously an

7    important criminal antitrust case involving considerable sums,

8    not just with respect to Japan Airlines but other airlines as

9    well, significant misconduct in the marketplace involving

10   several major airlines, widespread misconduct over a long period

11   of time, focusing just in this instance on the air cargo

12   conspiracy.

13       The guideline range reflects that.  The guideline range for

14   a criminal fine here is between 186 and 372 million dollars, a

15   fine all would agree is considerable.

16       As explained in the plea agreement and the sentencing

17   memorandum and here this morning as well, I conclude, in

18   agreement with the defendant and the government, that the

19   relevant factors at §8C4.1(b) of the guidelines warrant a fine

20   well below that range.

21       Some of the factors that are relevant here: the nature and

22   extent of the assistance provided by Japan Airlines has been,

23   according to the government, significant.  Indeed, to quote

24   Mr. Snyder, it's been outstanding, and it would, as indicated,

25   warrant a downward departure -- a significant downward departure

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    from the $186 million bottom of the guideline fine range in any

2    event.

3        It was timely as well because it was virtually immediate.

4    Japan Airlines was one of the first companies to begin

5    cooperating fully with the United States' investigation, and

6    that occurred shortly, indeed just days after Japan Airlines

7    learned of the investigation.

8        The government's assessment is that the cooperation has

9    been full and substantial and of significant and useful

10   assistance to the ongoing investigation.  The government,

11   therefore, has concluded that it would have filed a downward

12   departure motion and that a downward departure -- a significant

13   downward departure would have been warranted.

14       Here the reduction from the guideline range is

15   approximately 40 percent.  That's what 110 million is compared

16   with 186 million, the bottom of the guideline range, and the

17   Court has concluded that that's appropriate under all the

18   circumstances.

19       And particularly looking at what Mr. Snyder has reviewed

20   here this morning and the parties set forth in the joint

21   sentencing memorandum because of past financial difficulties of

22   Japan Airlines, an accounting expert was tasked to review the

23   financial circumstances of the company and concluded that Japan

24   Airlines would not be able to pay a fine in the guideline range

25   even with the downward adjustment for cooperation.  That was

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    based on consideration of past financial performance over the

2    prior five years as well as a reasonable projection of future

3    performance, taking into account operational and other factors.

4        On the basis of that analysis, as the government has

5    represented, a range of a corporate fine which could be paid

6    without jeopardizing the viability of Japan Airlines was

7    identified, and the $110 million figure is within that range.

8    Based on that assessment as set forth, the Court concludes that

9    that is an appropriate fine under all the circumstances and is a

10   fine that will satisfy the criminal justice objectives set forth

11   in Title 18 of the United States Code.

12       I conclude as well, based on the representations of

13   Mr. Hulkower, which Mr. Yamazaki has agreed to, that in light of

14   the defendant's ongoing substantial cooperation and assistance

15   and the adjustments to the corporate compliance programs that

16   have been made in light of these events, I conclude that a

17   period of probation will not be imposed as part of the sentence,

18   and that too is consistent with the plea agreement that the

19   parties have reached.  Therefore, again, I accept the

20   agreed-upon sentence in the plea agreement as part of the

21   defendant's plea of guilty to the charge.

22       With that, let me review the sentence that will be imposed.

23   Counsel, you will have one last opportunity to correct any

24   mistake that I might make in setting forth this sentence.  For

25   this, Mr. Yamazaki, I would like you and Mr. Hulkower just to

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    come up to the lectern.  (Defendant and counsel comply.)

2         And you're there on behalf of Japan Airlines, and it is the

3    judgment of the Court that the corporation, Japan Airlines

4    International Company, Ltd., is hereby sentenced pursuant to the

5    Rule 11(c)(1)(C) plea agreement as follows:

6         It is ordered that Japan Airlines International Company,

7    Ltd., shall pay a fine in the amount of $110 million on the sole

8    count of the information.  The fine shall be paid in five

9    $20 million installments and one final payment of $10 million

10   which is due at the fifth anniversary.

11        The first installment is due within 30 days of imposition

12   of sentence, and the following four installments are due at the

13   yearly anniversary of the imposition of sentence.  The defendant

14   is afforded the option of prepaying the remaining balance at any

15   time before the five-year anniversary.

16        It is further ordered that Japan Airlines International

17   Company, Ltd., shall pay a special assessment of $400.  That

18   special assessment, according to statute, is due immediately.

19        Now, Japan Airlines was convicted by a plea of guilty.

20   You can appeal that conviction -- Japan Airlines, that is, can

21   appeal that conviction if it believes the guilty plea was

22   somehow unlawful or involuntary or if there's some other

23   fundamental defect in the proceedings that was not waived by the

24   guilty plea.

25        Japan Airlines also has a statutory right, normally, to

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    appeal the sentence under certain circumstances, particularly if

2    it thinks the sentence is contrary to law.  Here, however, we do

3    have a waiver.  A defendant may waive those appeal rights as

4    part of a plea agreement, and Japan Airlines has entered into a

5    plea agreement which waives some or all of its rights to appeal

6    the sentence.  Such waivers are generally enforceable, but Japan

7    Airlines can, if it believes the waiver is unenforceable,

8    present that theory to an appellate court.

9         With that, Mr. Hulkower, is there any reason that the

10   sentence should not be imposed as I have indicated which is

11   consistent with the plea agreement?

12               MR. HULKOWER:  No, Your Honor.

13               THE COURT:  Mr. Snyder?

14               MR. SNYDER:  No, Your Honor.

15               THE COURT:  With that, is there anything further that

16   we need to address today, Mr. Snyder?

17               MR. SNYDER:  No.

18               THE COURT:  Mr. Hulkower?

19               MR. HULKOWER:  No, Your Honor.

20               THE COURT:  All right.  That completes these

21   proceedings.  That is the sentence of the Court.  It is imposed

22   as I have indicated, and a judgment and commitment will be

23   entered today, or at the very latest tomorrow, and any appeal

24   from the judgment would have to be made within 10 days of the

25   entry of judgment.  And as I said, I expect that judgment will

PDF created with pdfFactory Pro trial version www.pdffactory.com

1    be entered today, or at the very latest, tomorrow.  I thank you

2    all, and Mr. Snyder, did you have something?

3              MR. SNYDER:  No.

4              THE COURT:  All right.  You just looked poise to say

5    something.

6              MR. SNYDER:  Thank you, Your Honor.  That's what I was

7    poised to say.

8              THE COURT:  All right.  Well, I thank you all, and

9    Mr. Yamazaki, thank you.

10             THE DEFENDANT:  Thank you.

11             THE COURT:  And it's good to see some familiar faces

12   on both sides, and I wish you well.  That completes these

13   proceedings.

14             MR. HULKOWER:  Thank you, Your Honor.

15          (Proceedings adjourned at 10:19 a.m.)

16

17

18

19

20

21

22

23

24

25

PDF created with pdfFactory Pro trial version www.pdffactory.com

*   *   *   *   *   *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

_____
BRYAN A. WAYNE

PDF created with pdfFactory Pro trial version www.pdffactory.com